

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00165-CR

---

BRYCE DAVID LONG, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1791087

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

This is an appeal from a conviction for murder.[1]  Bryce David Long was indicted for the murder of Mia Rhodes.  Long appeals his conviction on two grounds:  (1) insufficiency of the evidence to overcome his self-defense claim, and (2) the trial court's refusal to include sudden passion in the jury charge.  We affirm the trial court's judgment.

## I.      Background

On July 21, 2022, Rhodes was driving her sister, Victoria Alise Shelby Parker, to work in Fort Worth.  They stopped at a gas station, returned to the roadway, and ultimately stopped at an intersection.  Parker testified that when the shooting started, both she and Rhodes were staring at and talking about a person in front of them who appeared to be preparing to jump from a bridge onto the roadway.  Parker testified that she saw something in her peripheral vision, turned her head, and saw a person aiming a firearm at them.  Parker immediately attempted to cover her sister, but to no avail; Rhodes was shot four times and died.  Parker was shot twice but survived.  There were a total of six rounds shot through the passenger side of the car.  The shooter sped away in his vehicle.

Rhodes was on bond for the alleged involvement in the murder of her former boyfriend, Jordan Harris.  Harris was Long's cousin.

There were numerous witnesses to the shooting, and Fort Worth Police Department's (FWPD) Real-Time Crime Center (RTCC) license-plate-reader camera footage evidence linked the shooting to Long's vehicle.  FWPD detectives spoke with Long, who—after denying

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).

knowledge of what happened—admitted to shooting Rhodes. Long claimed he was shocked to see Rhodes in the "free world" despite thinking she was in jail. He claimed that Rhodes gave him an intimidating look at the intersection, they "made eye contact," and that he saw her reach down where he believed she usually had a firearm, but stated that he reached "first." He did not see a firearm. Long testified that he was not sure she was looking at him when he shot her. Long admitted to speeding away and discarding his firearm with a friend. FWPD detectives and other expert witnesses later matched the weapon to the shooting and found matching, spent casings found in Long's vehicle.

At trial, Long testified that despite thinking Rhodes was in jail, he was aware of an "air of some threats" in Rhodes's social media. He also testified that on July 21, 2022, he thought a suspicious car was following him, so he pulled into a gas station across the street from the gas station used by Rhodes and Parker, but he could not tell whether the driver was Rhodes. After Rhodes and Parker left the gas station, he resumed driving—running a red light and driving through a business parking lot to catch up to Rhodes after she turned a different direction—and stopped next to her car at an intersection. Long claimed that he did not know Parker was in the car, despite his suspicion that it was Rhodes's car, and that he only recognized Rhodes when he pulled alongside of them at the intersection.

Long admitted that he initially lied to the detectives about his involvement in the shooting, later claiming that he was still shocked and scared when they spoke.

After hearing all of the evidence, the jury found Long guilty of murder. He received a sentence of thirty-five years' incarceration.

3

## II.     Self-Defense

In his first point of error, Long argues that the evidence was insufficient to overcome his self-defense claim.

### A.     Standard of Review

The trial court gave the jury a self-defense instruction.   As recently stated by the Fort Worth Court of Appeals, the standard of review for legal sufficiency to support a fact-finder's rejection of a self-defense claim is well-settled:

> A defendant has the burden of producing some evidence to support a claim of self-defense.  *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).  The State has the burden of persuasion in disproving self-defense.  *Id.*; *see also Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).  This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Braughton*, 569 S.W.3d at 608.   Self-defense is a fact issue for the jury to determine.  *Saxton*, 804 S.W.2d at 913–14.  With a verdict of guilty, a jury implicitly rejects a defendant's self-defense theory.  *Id.* at 914.
>
> In reviewing the sufficiency of the evidence to support the jury's rejection of a self-defense theory, we examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of murder and also could have found against the defendant on the self-defense issue beyond a reasonable doubt.  *Id.*; *see Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979).
>
> This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).
>
> The factfinder alone judges the evidence's weight and credibility.  *See* TEX. CODE CRIM. PROC. art. 38.04; *Queeman*, 520 S.W.3d at 622.  We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's.  *Queeman*, 520 S.W.3d at 622.  Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict.  *Murray v. State*, 457

S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

*Burdick v. State*, No. 02-25-00264-CR, 2026 WL 1911744, at \*6–7 (Tex. App.—Fort Worth July 2, 2026, no pet. h.) (mem. op., not designated for publication).

### B.    Analysis

The indictment in this case, in relevant part, charged Long with murder, which is a violation of Section 19.02(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 19.02(b) (Supp.). Section 9.31 of the Texas Penal Code establishes the defense of self-defense. TEX. PENAL CODE ANN. § 9.31. A person may justifiably use deadly force against another if he "would be justified in using force . . . under Section 9.31 . . . and when and to the degree [he] reasonably believes [that such] deadly force is immediately necessary . . . to protect [himself] against the other[ person's] use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a)(1)–(a)(2)(A). While Long did satisfy his burden to produce evidence through his own testimony and his statement to detectives—that Rhodes saw him, gave him an "intimidating look," and reached for a firearm—Rhodes's surviving sister, Parker, was also present in the vehicle. Parker provided testimony from which, in addition to other admitted evidence, a rational jury could conclude that Long's testimony was entirely false. Specifically, Parker said that she and Rhodes stopped at a gas station, resumed their trip, that Rhodes was killed while staring forward, and that they were both fixated on an individual who appeared to be preparing to jump off a bridge when the shooting began. Rhodes was shot multiple times in the head, face,

5

and neck on the right side of her body, and Parker was shot in the back; all of which confirms Parker's testimony about Rhodes facing forward and Parker attempting to cover her as the shots were fired. Further, Long admitted to pulling up next to Rhodes's vehicle, shooting her, fleeing, discarding the firearm, and initially lying to detectives. We also note that the evidence includes photographs and testimony about Rhodes' car, which had tinted windows that were closed on the driver's side and partially closed on the passenger side, and Parker's testimony that the windows were up because it was hot and the air conditioning was on.

"[W]e must presume that the jury resolved [all evidentiary] conflicts in favor of the prosecution and defer to that resolution." *Smith v. State*, 352 S.W.3d 55, 63 (Tex. App.—Fort Worth 2011, no pet.). The jury could have, and likely did, find Parker's testimony credible and Long's testimony incredible. Thus, Parker's testimony was sufficient to support the jury's rejection of Long's theory of self-defense.

Viewing the evidence in the light most favorable to the jury's implicit rejection of the self-defense justification and to its finding of guilt, we conclude that the evidence was legally sufficient for the jury to conclude that Long did not act in self-defense.

We overrule Long's first point of error.

## III. Sudden Passion

Long's second point of error concerns the trial court's denial of his request for a "sudden passion" instruction during the punishment phase of trial.

6

## A.      Standard of Review

"When an appellant protests that the trial court erred [in not granting] his request to charge the jury regarding sudden passion, a reviewing court must first determine whether the complained-of error exists." *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If error exists, the reviewing court considers the entire record to determine whether the error caused sufficient harm to require reversal. *Id.* Where, as here, the defendant preserved error by objecting to the charge, reversal is warranted if the defendant suffered "*some* harm" as a result of the error. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988).

"Sudden passion" must be "directly caused by," and arise from "provocation by," the individual killed, and must arise at the time of the murder. TEX. PENAL CODE ANN. § 19.02(a)(2) (Supp.); *Wooten*, 400 S.W.3d at 605 (quoting TEX. PENAL CODE ANN. § 19.02(a)(2)). "[P]assion that is solely the result of former provocation does not qualify." *McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005). "Adequate cause" is that which "commonly produce[s] a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1) (Supp.); *Wooten*, 400 S.W.3d at 605 (quoting TEX. PENAL CODE ANN. § 19.02(a)(1)). "[A]dequate cause is determined by applying the 'person of ordinary temper' standard, which is the same as the reasonable person standard." *Segovia v. State*, 467 S.W.3d 545, 557 (Tex. App.—San Antonio 2015, pet. ref'd) (quoting *Gonzales v. State*, 689 S.W.2d 900, 903 (Tex. Crim. App. 1985)).

7

"The defendant has the burden of production and persuasion with respect to the issue of sudden passion." *Wooten*, 400 S.W.3d at 605 (citing TEX. PENAL CODE ANN. § 19.02(d)).

**B.      Analysis**

A sudden-passion instruction is warranted even if the evidence on the issue is "weak, impeached, contradicted, or unbelievable." *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003) (per curiam).  However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury. *Id.* "An appellate court's duty is to look at the evidence supporting the charge of sudden passion, not the evidence refuting it." *Beltran v. State*, 472 S.W.3d 283, 294 (Tex. Crim. App. App. 2015) (citing *Trevino*, 100 S.W.3d at 239).

"Sudden passion is a mitigating circumstance that is relevant to determining the appropriate punishment of a defendant." *Id.* at 293.  "[I]f a defendant is convicted of murder, he may argue at punishment that he caused the death while under the immediate influence of sudden passion arising from an adequate cause." *Trevino*, 100 S.W.3d at 237 (citing TEX. PENAL CODE ANN. § 19.02(d)).  Ordinarily, murder is a first-degree felony.  TEX. PENAL CODE ANN. § 19.02(d) (Supp.).  If at the punishment stage of a trial the defendant proves by a preponderance of the evidence the existence of sudden passion, the offense is a felony of the second degree. *Id.*

Long did not testify during the punishment phase, and no evidence to support a claim that he acted with sudden passion was presented during that phase of trial.  Further, Long's testimony during the guilt-innocence phase that Rhodes's mere presence in her vehicle when he alleged she saw him is neither a provocation nor "adequate cause" entitling him to the instruction.  Finally, Long's assertion regarding previous social-media posts cannot be a provocation since they were

8

allegedly brought to his attention by another long before the shooting. Long testified that "[t]here were threats. That was the only reason where that it was a [sic] alarm to me." When asked, "Why would she harm you," Long responded, "I don't know," and maintained that he was afraid for his family. He then clarified that he was "[a]larmed," but not "scared" because "[s]he had to give [him] a reason at that point to be scared." So, Long's own testimony was that he was not "scared" when he saw her; instead, his claim that she reached for a firearm that he never saw was the triggering event. While Long now attempts to justify a sudden-passion instruction because of Rhodes's alleged involvement in Harris's murder, Long testified that he did not know the particular circumstances of Harris's murder, which occurred several months before, and that he did not know the details of Harris's case until later.

Long draws our attention to *Mitchell v. State*, 179 S.W. 116 (Tex. Crim. App. 1915), which was decided more than fifty years before Section 19.02 was implemented, for the proposition that where the defendant's killing of the deceased happens "at the first meeting" between them after the precipitating event, adequate cause may be found. *Id.* at 117. In *Mitchell*, the Texas Court of Criminal Appeals stated that, "it is the law of this [S]tate that in order to reduce a killing to manslaughter, when this ground is relied on, the killing must take place at the first meeting of the parties after he has become aware of the facts." *Id. Mitchell* involved "improper relations" between the deceased and the defendant's wife and repudiated the thought that "[o]ne cannot meet the wrongdoer frequently, and, while brooding over his wrongs, deliberately determine to slay him, and then kill him from ambush and hope to have the offense reduced to manslaughter." *Id. Mitchell* was decided on sufficiency grounds and was cited twice

9

in the 1930's in other cases, for other reasons, and fails to inform the reader of the time frame between the precipitating event, which we now call the "provocation," and the killing. Long likewise fails to identify a law of this State that extends *Mitchell*'s rule to facts like these, and we can find no modern equivalent. However, as recently reiterated by the Second District Court of Appeals, the provocation must "aris[e] at the time of the offense[,] and not from some former provocation. *Hargrove v. State*, No. 02-25-00116-CR, 2026 WL 1911739, at *8 n.11 (Tex. App.—Fort Worth July 2, 2026, no pet. h.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. § 19.02(d)); *see* TEX. PENAL CODE ANN. § 19.02(a)(1)–(2). The record in this case reveals no evidence of such provocation nor evidence of adequate cause "sufficient to render the mind incapable of cool reflection." *See* TEX. PENAL CODE ANN. § 19.02(a)(1). Long may not rely on his allegation that Rhodes reached for a firearm, because on July 21, 2022, he never saw a firearm, and nothing was done to him or anyone else with a firearm wielded by Rhodes. Finally, an alleged "intimidating look" would not render a rational mind incapable of reflection.

Long has failed to identify evidence that would warrant a sudden-passion instruction. We have also searched the record for any such evidence and find none. Accordingly, we need not address whether Long was harmed.

We overrule Long's second point of error.

## IV.   Conclusion

We affirm the judgment of the trial court.

Charles van Cleef
Justice

Date Submitted:   July 9, 2026
Date Decided:   July 20, 2026

Do Not Publish